UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPORT PRO SURFACING, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:24-cv-11000-JEK ) |
| KENNETH FLAKE; RFC FINISHES, LLC; PETER RIGGS; AND JPRES CORP., LLC, | ) ) ) |
| Defendants. | ) ) ) |

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO TAKE LIMITED JURISDICTIONAL DISCOVERY

**KOBICK, J.**

This case involves a dispute between plaintiff Sport Pro Surfacing, LLC ("SPS") and its former employee, defendant Kenneth Flake, who left SPS and started a new business, defendant RFC Finishes, LLC. The amended complaint, which asserts only state-law claims, seeks to invoke this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Flake has moved to dismiss the amended complaint for lack of subject matter jurisdiction because, he contends, the parties are not diverse. In response, SPS has moved for leave to serve limited jurisdictional discovery upon Flake to support its contention that the parties are diverse. In particular, the parties dispute whether Flake was domiciled in Texas or Florida when the original complaint was filed on April 16, 2024. SPS, a limited liability company whose citizenship is determined by the citizenship of its members, is a citizen of Florida, Massachusetts, and Connecticut. Thus, if Flake was a citizen of Texas as of April 16, 2024, diversity jurisdiction exists, but if he was a citizen of Florida, there is not complete diversity between the parties, and this Court lacks subject matter jurisdiction.

SPS's motion for limited jurisdictional discovery will be denied. The undisputed evidence before the Court indicates that Flake became a citizen of Florida before the original complaint was filed in April 2024. SPS has failed to identify what facts it hopes to learn if discovery were permitted or how those facts could demonstrate that the parties are diverse. It has not, accordingly, carried its burden to make a colorable claim of jurisdiction and to show that it has been diligent in preserving its rights to jurisdictional discovery.

## BACKGROUND

The following facts—drawn from the amended complaint and extrinsic evidence submitted by the parties—are undisputed unless otherwise noted. The Court recounts only those facts relevant to SPS's motion for limited discovery.

The plaintiff, SPS, is a four-member Massachusetts-based limited liability company that sells and installs commercial flooring. ECF 21, ¶¶ 2, 12; ECF 11. For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of all of its members. *See BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 693 (1st Cir. 2023). The members of SPS are citizens of Massachusetts, Connecticut, and Florida. ECF 11.

Before May 31, 2019, Flake was employed by SPS and owned a 15% stake in the company. ECF 21, ¶ 13. On June 7, 2019, Flake sold his ownership interest to SPS pursuant to a stock purchase agreement, but he continued working for SPS as an employee until he resigned on November 21, 2023. *Id.* ¶¶ 14, 25.[1] Flake resided in Texas for some or all of the time that he was employed by SPS. *See* ECF 29, ¶ 5. In May 2023, Flake informed SPS via text message that he had moved to a new residence in Cypress, Texas. ECF 31, ¶ 3(a).

---

[1] Flake initially resigned from SPS on July 29, 2022, but he was rehired approximately two weeks later. ECF 21, ¶¶ 22-23.

On August 29, 2023, while still employed by SPS, Flake started his own commercial flooring company, RFC Finishes. ECF 21, ¶ 24. Flake is the managing member of RFC Finishes. ECF 29, ¶ 1; ECF 31-1. On November 21, 2023, roughly three months after establishing RFC Finishes, Flake resigned from SPS. ECF 21, ¶ 25; ECF 29, ¶ 4. Around that time, Flake began looking for homes in Florida with his girlfriend, Jeanne Falco. ECF 29, ¶ 8; ECF 29-2. On two occasions in 2023, both before his resignation, Flake informed senior executives at SPS that he was considering moving to Florida. ECF 29, ¶¶ 6-7; ECF 29-1.

On February 21, 2024, Falco signed a lease for a home in Treasure Island, Florida, with a move-in date of April 1, 2024. ECF 29, ¶ 9; ECF 29-3. Falco is listed as the sole tenant on the lease, but Flake is listed as an "authorized occupant," and he signed the lease in this capacity. ECF 29-3, at 1, 10. In March 2024, Flake ordered Wi-Fi equipment for the Treasure Island home and changed his residential address with Chase Bank to that of the Treasure Island home. ECF 29, ¶¶ 10-11; ECF 29-4; ECF 29-5. His bank statement for the period from March 7, 2024 to April 4, 2024 is addressed to Flake at his Florida address. ECF 29-5. On April 1, 2024, Flake submitted to the United States Postal Service a permanent address change request that listed a residence in Cypress, Texas, as his "old address," and the Treasure Island home as his "new address." ECF 29, ¶ 12; ECF 29-6.

On April 16, 2024, SPS filed the complaint initiating this suit. ECF 1. That same day, Flake obtained a fishing license from the Florida Fish and Wildlife Conservation Commission that lists his Treasure Island address. ECF 29, ¶ 14; ECF 29-9. He was issued a Florida driver's license ten days later, on April 26, 2024. ECF 29-7. Flake avers that he has registered to vote and has insured his vehicles in Florida, but he has not provided evidence of the date on which he took these actions. *See* ECF 29, ¶¶ 13, 16; ECF 29-8. In an affidavit signed on August 2, 2024, Flake states that he

3

"consider[s] Florida to be [his] home and permanent place of residence." ECF 29, ¶ 17. Flake also avers that he does not have any real or personal property in Texas, no longer has a personal connection to Texas, and does not intend to return to Texas. *Id.*

After SPS filed an amended complaint in July 2024, Flake filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that there is not complete diversity among the parties because he and one of SPS's members are citizens of Florida. ECF 27. SPS contends that Flake has not provided sufficient evidence to establish that as of April 16, 2024, when the initial complaint was filed, he was domiciled in Florida rather than Texas. *See* ECF 30, at 7. To support that contention, SPS moved for leave to serve an unspecified number of interrogatories and document requests, and to depose Flake, for the purpose of determining Flake's domicile as of April 16, 2024. *Id.* at 7-8.

## DISCUSSION

Under 28 U.S.C. § 1332(a), the Court has subject matter jurisdiction over all civil suits between citizens of different states where the amount of controversy exceeds $75,000. As the party invoking the Court's jurisdiction, SPS bears the burden of demonstrating, by a preponderance of the evidence, that complete diversity exists among the parties. *See Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 366 (1st Cir. 2001); *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992). Diversity of citizenship is determined as of the date on which the complaint was filed—April 16, 2024, in this case—and "once diversity jurisdiction is established, it is not lost by a later change in domicile." *Bank One*, 964 F.2d at 49; *see Valentin*, 254 F.3d at 361.

"For diversity purposes, a person is a citizen of the state in which the person is domiciled." *De La Rosa v. De La Rosa*, --- F.4th ---, 2024 WL 4284642, at *2 (1st Cir. Sept. 25, 2024). A person's domicile "is the 'place where he has his true, fixed home and principal establishment, and

4

to which, whenever he is absent, he has the intention of returning.'" *Valentin*, 254 F.3d at 366 (quoting *Rodriguez-Diaz v. Sierra Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988)). "While a person may have more than one residence, he can only have one domicile." *Bank One*, 964 F.2d at 53.

Ordinarily, there is a presumption of continuing domicile, *id.* at 50, and the parties here do not dispute that Flake was domiciled in Texas in 2023, while he worked for SPS. The nub of the dispute is whether Flake changed his domicile to Florida before SPS filed its complaint on April 16, 2024. "In order to change his domicile, a person must: (1) be present in the new state; and (2) intend to remain there indefinitely." *De La Rosa*, 2024 WL 4284642, at *3. So long as these requirements are satisfied, "[t]here is no minimum period of residency required" to change one's domicile. *Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 701 (1st Cir. 1979). "The factors relevant to determining a party's intent include: 'the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment.'" *Bank One*, 964 F.2d at 50 (quoting *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 11-12 (1st Cir. 1991)); *see De La Rosa*, 2024 WL 4284642, at *3 (emphasizing that these factors are only "'examples of indicia of intent' rather than requirements" (quoting *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 33 (1st Cir. 2008))).

SPS contends that it needs limited jurisdictional discovery in order to determine whether Flake was, on April 16, 2024, present in Florida and intent on remaining there indefinitely. A plaintiff seeking jurisdictional discovery "must make 'a colorable claim of jurisdiction' and must show that it 'has been diligent in preserving [its] rights to be entitled to jurisdictional discovery.'" *Motus, LLC v. Cardata Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022) (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625-27 (1st Cir. 2001)). The plaintiff must also "'present

facts to the court which show why jurisdiction would be found if discovery were permitted.'" *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 27 (1st Cir. 2007) (quoting *Swiss Am. Bank*, 274 F.3d at 626). "A 'timely and properly supported request for jurisdictional discovery merits solicitous attention.'" *Motus*, 23 F.4th at 128 (quoting *Swiss Am. Bank*, 274 F.3d at 625).

While SPS has exhibited some measure of diligence in preserving its rights by filing a timely motion for jurisdictional discovery, *Motus*, 23 F.4th at 128, the motion itself fails to identify the facts that SPS hopes to learn through such discovery, *see Swiss Am. Bank*, 274 F.3d at 626 (a party is "less than diligent" when it does not identify the facts it seeks to uncover through jurisdictional discovery). SPS has not specified the documents it wishes to request, the information it hopes to glean from interrogatories and a deposition of Flake, and how any of these discovery events could lead to evidence that would undermine Flake's evidence, including his sworn testimony that he is a Florida resident who "consider[s] Florida to be [his] home and permanent place of residence." ECF 29, ¶¶ 3, 17. SPS's assertion that Flake may be domiciled in Texas, rather than Florida, rests only on Flake's residency in Texas through November 2023, and a text message he sent in May 2023—nearly a year before the April 2024 filing of the complaint—indicating that he had moved to a new address in Texas. But SPS has come forward with no evidence that Flake was present in Texas, and intended to remain in Texas indefinitely, as of April 2024. In view of the dearth of evidence to support its contention that Flake may have been domiciled in Texas as of the filing of the complaint, it was "incumbent upon" SPS to identify what additional facts it hoped to learn if jurisdictional discovery were permitted. *Negron-Torres*, 478 F.3d at 27.

On the record before the Court, SPS has failed to make a colorable claim that the parties are diverse because the uncontroverted evidence shows that Flake became a citizen of Florida before the complaint was filed on April 16, 2024. Flake has twice stated in sworn affidavits that

6

he began residing in Florida before SPS filed the complaint on April 16, 2024. ECF 13-1, ¶ 1; ECF 29, ¶ 3.[2] Because Flake was present in Florida as of that date, the only issue is whether Flake also had the intent to remain in Florida indefinitely, as required to change his domicile from Texas to Florida. *See Valentin*, 254 F.3d at 366; *Hawes*, 598 F.2d at 701 (no minimum residency requirement to change one's domicile). The record demonstrates that Flake possessed this intent. Flake informed SPS that he was considering moving to Florida on January 2, 2023, ECF 29, ¶¶ 6-7; ECF 29-1; he began looking for homes in Florida with Falco in November 2023, ECF 29, ¶ 8; ECF 29-2; and, on February 22, 2024, he signed Falco's lease for the Treasure Island home as an "authorized occupant," ECF 29-3, at 1, 10. After signing the lease, Flake took additional actions that show his intent to establish the Treasure Island home as his "true, fixed home and principal establishment." *Valentin*, 254 F.3d at 366. Before the complaint was filed, Flake changed his address with the United States Postal Service to the address of the Treasure Island home, ECF 29-6; changed his address with Chase Bank to the address of the Treasure Island home, ECF 29-5; and ordered Wi-Fi equipment for the Florida house, ECF 29-4. Although his business, RFC Finishes, remains in Texas, Flake avers that he performs his work for RFC Finishes remotely in Florida. ECF 29, ¶ 16.

To be sure, some of Flake's evidence pertaining to the traditional factors used to assess an individual's intent to change domiciles postdates the filing of the complaint, and, accordingly, has little probative value for determining Flake's citizenship as of April 16, 2024. For example, Flake obtained his Florida fishing license on the day the complaint was filed, and he obtained his Florida driver's license ten days later. *See Bank One*, 964 F.2d at 50 (identifying the place where "driver's

---

[2] Although SPS claims that this is a "convenient assertion," SPS does not meaningfully dispute that Flake *resided* in Florida before April 16, 2024. *See* ECF 30, at 7. Rather, SPS contests whether Flake had changed his *domicile* to Florida.

and other licenses [are] obtained" as a relevant factor); ECF 29-7; ECF 29-9. Flake has registered to vote and insured his cars in Florida, and he plans to file his income tax return as a Florida resident, but he has not offered any evidence that he took these actions or made these decisions prior to April 16, 2024. *See Bank One*, 964 F.2d at 50 (identifying the "place where civil and political rights are exercised, taxes paid, [and] real and personal property (such as furniture and automobiles) located" as relevant factors); ECF 29, ¶¶ 13, 16. However, the First Circuit has repeatedly "made clear that these factors are 'examples of indicia of intent' rather than requirements." *De La Rosa*, 2024 WL 4284642, at *3 (quoting *Padilla-Mangual*, 516 F.3d at 33). Even if the Court disregards evidence postdating the filing of the complaint, the record still demonstrates that Flake formed the intent to make Florida his "fixed home and principal establishment" before April 16, 2024. *Valentin*, 254 F.3d at 366.

SPS claims that Flake's assertion that he moved to Florida before the complaint was filed is a "clear and hollow attempt to dodge the Court's exercise of subject matter jurisdiction," and it faults Flake for his "continuing failure to produce adequate evidence that he is domiciled in Florida." ECF 30, at 7. As discussed, however, SPS has not explained how additional evidence will help the Court determine whether diversity jurisdiction exists in this case, or even identified what specific evidence it seeks. *See Negron-Torres*, 478 F.3d at 27; *Swiss Am. Bank*, 274 F.3d at 626. Flake has already submitted two affidavits and substantial documentary evidence, including the lease for the Treasure Island home, his driver's license, a fishing license, utility receipts, and various pieces of mail showing the address of the Treasure Island home. SPS may dispute the weight of this evidence—particularly evidence created or obtained after the complaint was filed—but it has failed to "'present facts to the court which show why jurisdiction would be found if discovery were permitted.'" *Negron-Torres*, 478 F.3d at 27 (quoting *Swiss Am. Bank*, 274 F.3d at

626). The only affirmative evidence that SPS presents to support its claim that Flake was still domiciled in Texas as of April 16, 2024, is the fact that Flake moved to a new Texas residence in May 2023 and that his company, RFC Finishes, is based in Texas. ECF 30, at 2; ECF 31, ¶ 3. Without more, SPS cannot make a "colorable claim" of diversity jurisdiction. *Motus*, 23 F.4th at 128.

## CONCLUSION AND ORDER

For the foregoing reasons, SPS's motion for leave to take limited jurisdictional discovery, ECF 30, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: October 15, 2024